You may proceed. Good morning, Your Honors. I'm Dan Weisskopf. May it please the Court, I represent the appellant Trident Seafoods. And I'll watch my clock and try to reserve four minutes for rebuttal. The District Court granted summary judgment in favor of ACE based on a watercraft exclusion in the party's insurance contract. And the briefs contain a number of arguments about ambiguities in the watercraft exclusion and ambiguities in the policy if the watercraft exclusion is applied. But even assuming that there are no ambiguities in the policy and that the Cover J exclusions are all at play, the Court still erred in granting summary judgment. And it did so because of American Best, American Best Food, because the watercraft exclusion does not apply to the harm that's at issue in this case. Counsel, can I ask you a quick question? There's two arguments here it appears you're making. One is that the policy was ambiguous and therefore should be construed, obviously in accordance with our standard law, against the insurer, the policy drafter. And the other is that it's a little inconsistent in that you say, well, but even if it isn't inconsistent, the way that it's drafted is unconscionable and coverage would be illusory and therefore the policy should be construed against the insurance company. Am I right? You're correct that there are a number of alternate arguments. One is that it's inconsistent, that it's ambiguous. Another one is that if it's applied the way that ACE would have it applied and have the District Court have it applied, that it would undo, I mean Trident is a seafood company and so much of their product rises from boats and watercraft and so it would do great harm to the policy in terms of making it more illusory. Can you explain that to me in terms of specifics? Because that's precisely the question I wrote down here is what makes it illusory? I mean businesses operate in all different milieu and they often have overlapping and different insurance policies for different things. I mean ranging from unfair competition to product liability to you name it. So what would make it illusory if the watercraft clause is invoked here? It wouldn't make it illusory if the watercraft exclusion is applied the way that we view it should be applied under American Best. It would be illusory if you applied the way the District Court applied it, which is basically just saying look anywhere back from, find a harm, if anywhere back in the chain is a boat, you're out. And that's not the way that the policy should be applied. So in that way American Best describes how a watercraft exclusion should be applied or how a rising out of clause should be applied. And what happened is on this watercraft, as your honors are aware, there's a fuel tank and a fish oil tank and there's a crack between them. And if Trident had, Trident found out about this crack, well the fish oil that had been contaminated was off sitting on a shelf. If Trident at that point said we have a serious problem here, there's a crack in the tank, or if it had policies to test its oil before it's sent to the customers that had followed up on the crack, then there would have been a harm and that harm would have been to Trident. It would have been a loss of this supply oil, this fish oil. They would have found out it was contaminated and they would have had to dispose of it. That would have been a loss to Trident of the supply oil. But that's not what happened. Trident didn't take those steps. Trident didn't discover, when they discovered this crack, they didn't sound the alarm. And so instead Trident and Trident didn't, you know, warn its employees or test the oil. So instead this harm to the supply that would have been a harm to Trident became a giant harm to Matsura who had taken this oil, fed it to their yellow-tailed tunas, and then put it out on the market. And people said there's a fuel oil smell of these tunas. It became an existential crisis for Matsura. So it was a complete, due to Trident's negligence, there was a completely different harm to a different party. So that's what you say this excess policy in part covers, is Trident's own negligence.  It's a CGL policy. Trident's negligence in not discovering that the fish oil was contaminated once it was taken off the ship? Correct. So the oil had gone off the ship, contaminated after there had been this crack in the walls. And then it was sitting on shelves and they discovered the crack. And no one said, this is a major problem. We've got a crack in the tank where we sell this stuff for consumption. No one told the shoreside employees, someone needs to check this. Someone needs to go track down who this oil went to. There was no policy for testing. And so this oil, unbeknownst to anyone, was sold by Trident to Matsura. And so the issue is there's a jury question of whether or not Trident should have sold this oil to a customer, whether it was negligent in doing so. And that is the harm. And the American Best Food case is a patron was shot in the stomach outside of a bar and went in and said, please help me. And they said no and they dumped this patron on the ground outside. And so American Best Food said, if there's an intervening negligence between the, and sorry and I'll step back there, there was an arising out of assault exclusion in the policy. And so the bar said, the insurance company said, we're not liable for this negligence in dumping them outside because this all came out of an assault. And what the American Best court said is no, there's post-assault negligence. And that cuts off the arising out of exclusion. That after the assault, there was negligence by this bar and throwing the guy out on the sidewalk. And I just, I handed out a handout with a couple of quotes from American Best. And there's one quote that I really want to unpack. It's the quote number three on the handout that I handed out. And it says, in these cases, it was irrelevant that the chain of events was caused by an assault. If the insured had acted exactly the same in response to a covered occurrence, the liability could have been the same. So in American Best, if this patron rather than having been shot, if a light had fallen on his head inside the club or he'd had a heart attack or he'd had a drug overdose, there's still liability because the club has a responsibility to its patrons to take care of somebody in harm. And similarly, with Trident, it doesn't matter where the oil came from. This oil, this fish oil could have been contaminated on the boat. It could have gone rotten on their shelves. It could have been synthetic oil that was, they used the wrong recipe. Someone could have broken in and poisoned it. The fact of the matter is Trident sold bad product to a customer. And as a result, that customer had enormous harm with its own product. And so the district court did not agree with applying American Best, even though this is 2010 Supreme Court, Washington Supreme Court precedent. This should be controlling. And the district court said, well, no, I don't need to apply American Best because it's a duty-to-defend case, not a duty-to-indemnify case. And so the legal holdings on what a rising out of means in a duty-to-defend case are somehow can be ignored. And that analysis is not, that's an error. So give me an example of how bad fish oil would be determined to be a rising out of the boat or ship or I guess you call it what? Yes, so that if, again going back to what the harm could have been, if Trident had discovered that on this boat there was a crack and the oil was bad and they immediately told everyone we've got to dispose of this oil because it's bad oil and they had all the policies in place to test it, that perhaps, that loss to Trident of the supply, and it would have been a couple hundred tons of oil, that might not have been covered because the boat caused this oil to be contaminated. The fact that they decided to go ahead and sell it, now it's covered. Correct. I mean, not that they didn't decide. I mean, obviously if it was intentional or somehow there was something untoward then there would be other policies in place. But correct, things happen on boats. The thing that cuts off something happening on a boat to getting to a consumer is you have people and you have policies and you have all the various protections along the way. And so there's that jury question about whether along the way there were steps that should have been taken where they could have caught this loss and just disposed of the oil. Was there underlying litigation in this case? There was just a claim from Matsura. Was part of their claim that your client was negligent in not discovering that the fish oil was contaminated? I don't know if there was an allegation. I mean, I know that there was a question of how it happened, but I don't know if there was an explicit allegation. I take it at some point your client tendered to Ace. Correct. And was that mentioned? The negligence? Yes. And again, those are... I guess as your opponent can tell us. Yeah, I will check the record while I'm sitting down with my time and I'll try to answer that question if not. Counsel, you understand that under your theory it would almost behoove your client to engage in willful blindness, as we say in the criminal law, this is no criminal case. Because if they discover the contaminated oil and then dispose of it, there's no coverage. But if they allow the contaminated oil to get into the consumer chain and then somebody blows the whistle and says, wait a minute, we've got contaminated oil down here that's been polluting fish and we can't eat the fish and so forth, then you have coverage. Correct. No, I understand, but a couple of things on that. It's almost a public policy problem here, isn't it? Well, if there was any indication of intent, we would be in a different place and there would be issues with the policy. If it looked like there's... I didn't say intent, I said willful blindness. Willful blindness. But again, this is the structure... Well, a couple of things. One of the ambiguity arguments in the policy is that this watercraft exclusion was not even supposed to... No one ever thought that this was going to apply in this way. The way that the watercraft exclusions normally are construed in insurance policies and the way that we have expert testimony that was not considered by the district court is that a watercraft exclusion is about a boat being used as a boat. It's like for crash, boat crashes. So it takes out... They have multiple insurance and you have a boat insurance for if you get into a crash. And so this just basically carves that out. No one thought that this was going to in any way in terms of setting up the insurance get to a point downstream where you're talking about products liability claims. But again, Trident has its reputation. I mean, obviously it's not... Even if insurance covers a product liability issue, Trident has been built itself on being a company that has good product and this is not good for business in any way, shape, or form to be having something like this happen, coverage or no coverage. So, I mean, I understand that the way that this policy is construed, that could be an issue, but I don't think it's actually in effect given that there's intentional misconduct provisions and Trident's reputation that it's really going to have a profound effect on the way that the parties would act. Is it possible that there's a bifurcated claim treating the 2.7 metric tons that were contaminated at sea differently from the other larger amount that became contaminated because of the loading and unloading? I think that you could get to that point if you were in a different one of our arguments, which was how the unloading and loading and the PCOH coverage affects this claim. I think that under American Best Food, the answer would be everything that got to a consumer, there's negligence, there's potential negligence involved there, and so American Best Food would cut off any possibility of the arising out-of-cause reaching that. But does it matter that in American Best Food, one of the big differences is that it wasn't just the original situation, it was an exacerbated situation which ultimately caused the ultimate demise and problem. And here it's the same situation from A to B. So is that a basis for distinguishing American Best Food? So I would say a couple things to that. One is I don't think it's the same situation. I think that it's actually a step further than American Best Food. In American Best Food you have a gunshot and then the person's gunshot and maybe there's something else that happens with the gunshot is what the harm is. Here there's a different harm to a different party. There's a harm to Trident of the loss of oil if they had caught this thing. And there's a harm to Matsura by the oil getting to Matsura, so it's an entirely different... I don't really see that. I mean, it's the same oil. And you're being sued because you have contaminated oil that originated in a contaminated tank or whatever the vessel is called. Correct. And so if it was an exclusion based on oil, like a rising out of oil, I would agree that anything rising out of oil would be excluded. But it's an exclusion about what happened based on a rising out of a watercraft. And from the watercraft to the injury could never happen absent the negligence. The negligence took one fundamental injury and changed it completely and gave it to another... So if you hadn't sold it to anybody and you were still sitting there with a dockload of this stuff which is still contaminated... Correct. ...and you think it should be covered by insurance, then your argument would be, well, actually we don't have any insurance coverage because it arose out of... What would be your argument then? So, no, if we'd caught it and it was contaminated and sitting on the dock and we have to dispose of it, we would not be here today. I don't believe that that would be covered. You wouldn't be here, in other words, if you wanted to get reimbursed for your loss. And the only reason you think it's different is because you passed on the loss, in effect, to the customer. Well, we didn't pass on the loss... Pass on the contaminated oil. Because the oil, right, the oil by itself would have had to be disposed of, and we fundamentally changed taking oil, bad oil, that should have been potentially made of, would have been disposed of, and turned it into what was a product claim for Matsuura based on yellowtail tuna. So between those two steps, there were months, there were months of folks who maybe should have discovered this, maybe should have thought about this, there should have been policies in place, there should have been tests that were performed. Well, there's oil sitting on the shelf, and we know about this crack. Yeah, I think I have your point. You've used your time, but I'll give you a minute for rebuttal. Thank you so much. Thank you. Good morning. May it please the Court. My name is Tom Jones, and along with Melissa White, we represent Ace American Insurance Company in this matter.  There was no lawsuit here, and the tender to Ace, my client, ER-176, simply said that there's been a problem because Matsuura, a client, a customer of Trident, purchased fish oil that was contaminated. That was the tender. There was never a lawsuit. There was a settlement between Matsuura and Trident that involved some exchange of product and some money, and the insurers who contributed to that settlement were the insurers who insure losses on vessels. So Trident had a portfolio of insurance. One set of policies insured losses on vessels, marine policies. When losses occur on vessels, that's what those policies cover, and then the other policies that were issued were general liability policies that have a watercraft exclusion so that if a loss occurs on a vessel, arises out of the use of a vessel, that general liability policy does not pay for that loss so that there's not overlapping insurance. That's the portfolio that Trident had, and of course it makes sense. If this oil was fine coming off the boat, was stored in an on-land storehouse, and became contaminated for any reason, would the exclusion apply?  So it's a good question, Your Honor. The exclusion applies only if there's bodily injury or property damage arising out of the use, ownership, or operation of a vessel. So here the contamination occurred on the vessel, all the contamination. If, in your hypothetical, the contamination occurred shoreside, then ACE's policy would have covered that. That's what the ACE policy covers, and the vessel policies would not have covered that loss. But here it's uncontested that the loss, that is the contamination, all of the contamination, originated on and took place on the vessel before it was sent shoreside. Now you obviously read the Washington case differently, the American Vest case differently, because their argument is, well, we were probably negligent or potentially negligent in not discovering it before it got passed on to the customer, and it's that, in effect, intervening cause that permits coverage. How do you see that argument dovetailing with the American Vest insurance? It's a good question, Your Honor. And here's the answer to that position by Trident. First of all, the cases relied on by Judge Robart, the Tolbridge decision, the Krimple decision primarily, made clear that when interpreting a rising-out-of language that was in use here, the courts have made it very clear in this jurisdiction that you don't engage in a proximate cause analysis. And that's what Trident is arguing here. If the damage arose out of the use of a vessel, which indisputably it did here, then that exclusion bars coverage. So the proximate cause analysis that is being proposed by Trident here simply is not in use pursuant to Washington jurisprudence. The test is, where did it originate from? So if the damage originated from the vessel, the watercraft exclusion applies. And it's uncontested that all of the contamination occurred on the vessel, number one. Number two, Judge Robart, correctly in our view, distinguished American Vest food by saying, first, that it is a duty-to-defend case. And American Vest said that, that the duty-to-defend is distinct from the duty-to-indemnify. Indemnify of scope. Correct. So the case that we have here is only a duty-to-indemnify case. There was never a duty-to-defend because no lawsuit was filed. And that's a very important distinction. And the reason it's important is because in American Vest, like in other duty-to-defend cases, Washington insurers are obligated to defend an insurer if there is a potential for coverage based on the allegations. So if this oil had come off the vessel and was stored dockside on land and Trident discovered that it was contaminated somehow and didn't know how that occurred, would the exclusion apply? The exclusion would apply, Your Honor, because the contamination arose out of the use of a vessel. The fact that the oil was produced on the vessel is enough. That triggers the watercraft exclusion under Washington case law. So anything thereafter, it's a causation analysis, Your Honor. And the Washington courts, Toll Bridge and Krimple, have made it very clear that a causation analysis is not appropriate in the arising out of context. You don't engage in a proximate cause analysis. The test is simply whether the damage arose out of where it originated. And if it originated on the vessel, this liability policy that covers shore-side negligence only does not apply because the watercraft exclusion bars coverage. The coverage for shore-side negligence under this policy at your client's position does not cover Trident's negligence in failing to discover the contamination before the oil was shipped to Japan. That's correct, because the damage here was sustained by the third party, Matsura, the customer of Trident. That's who sustained the damage. That's the property damage when Matsura purchased contaminated fish oil and made it into sushi. So, again... They turned it into food. They turned it into fish food. Food for their fish. I'm sorry. Correct. For their farm racing of yellowtail. Correct. You're correct, Your Honor. Because if you could turn oil into fish, it would be a whole different thing. We'd all be looking for that job. Thank you for the correction. I think that job was taken already. So, again, just to reiterate, in enforcing or analyzing whether the arising out of language in a watercraft exclusion should be enforced in Washington, you look to simply where the property damage originated, and if it originated on a vessel, the watercraft exclusion applies, regardless of what happens thereafter. It doesn't matter, in your view, how many... To follow up on Judge Hawkins' point, it doesn't matter how many intervening causes or how much time has elapsed. I mean, this thing could have been negligently transferred without appropriate checks through three or four different wholesalers before it ever reached the final consumer, who then discovered the problem, but it wouldn't matter, in your view. The courts in Washington have said, you do not engage in an efficient proximate cause analysis. And here, however, let me address that for a moment. But the facts here, as Judge Robart said, are distinguishable. One, because this is a duty to defend case, and both Judge Robart and Judge Jones in the Trident v. Commonwealth decision rejected American home food in an indemnity-only case. So first, Judge Robart did that. Secondly, Judge Robart said that, and concluded that, the facts in American home food were distinguishable because all of the damage in this matter arose on the vessel. That's where the contamination occurred. Well, that goes then to, could there be another independent event that exacerbated the damage? So, for example, let's say it's contaminated, but because after it got on land, you stored it at a high temperature, that that actually multiplied and made the damage worse. Would that be an independent event that could trigger coverage? I would argue that that's approximate cause analysis, and the courts have rejected a proximate cause analysis in interpreting the arising out of language. But let me talk about the facts here. That's a good question. Let me talk about the facts here and American home food. So, again, the facts here are that all of the damage arose on the vessel by using the vessel, all of the damage. So Trident is arguing that in American home food, even though it's a duty-to-defend case where there are simply allegations, and in our case it's a duty-to-indentify case, we know what the cause was, we know what the damages were, that's the significant difference. But Trident is arguing that if there is a potential for Trident to be damaged later or have some liability, then American Best Food requires the watercraft exclusion to not apply. And the factual distinction, I've talked about the legal distinction, the factual distinction is, in our case, all of the damage, again, arose from the use of the vessel. So regardless of what Trident may have done thereafter, the damage would not have increased because Trident would have simply been dealing with contaminated oil, but all of the oil was contaminated on the vessel, so the damage would not increase. And I think it's also important to look at the handout that you were given,  and this is the important distinction with regard to the facts. Number seven, we hold that ALEIA's policy afforded coverage for post-assault negligence, here's the key language, to the extent it caused or enhanced Dorsey's duties. That is a duty-to-defend concept. It's not a duty-to-indentify concept. In our case, it's a duty-to-indentify case. We know what the damages are, and we know what the cause is. So American Best Foods simply doesn't apply, as Judge Robart concluded and Judge Joan concluded, in a duty-to-indentify context. After all, the courts recognize that duty-to-defend is far broader than duty-to-indentify. And let me just read a passage from Judge Robart's order with regard to the American Best Food case. He said, ER 21-22 in his order, American Best Food deals with a duty-to-defend rather than the duty-to-indentify. As the court makes clear multiple times, the duty-to-defend is different from and broader than the duty-to-indentify. See also Trident Seafoods Corporation v. Commonwealth. Rejecting American Best Food's applicability because its holdings relate to the insured's duty to defend, which is not an issue in defendant's motion, to whatever degree American Best Food also touches on the duty-to-indentify, it does not represent a change in the law. And then Judge Robart continued, furthermore, American Best Food is factually distinguishable from the instant case. In American Best Food, coverage depended on the nightclub's negligence directly causing or enhancing the victim's injuries, holding that the policy afforded coverage to the extent post-assault negligence caused or enhanced the plaintiff's injuries. Trident's shore-based negligence consists of failing to connect the dots after discovering the cracked fuel tank when the contaminated fish oil had already been shipped to Japan, citing the Macinty Declaration, Paragraph 6. And then the court concluded, this is less direct as a cause of Trident's product liability than the nightclub's post-assault negligence was in American Best Food, even though shore-based negligence may be a but-for cause of Trident's liability. So the court said, looking at the facts here, where all of the damage occurred on the vessel, this is not an intervening cause. This did not cause new damage. Regardless of the negligence that Trident may have engaged in shoreside, it did not increase the damage. All of the fish oil was contaminated on the vessel. So it's not even an intervening cause if you applied American Best Food. So let me touch briefly on one last issue or a couple of issues. First of all, Trident has argued that the watercraft exclusion is ambiguous because the products completed operations hazard is separate in part from the CGL coverage A, and that's simply not accurate. And we've pointed out to you in the papers, ER 430, the policy states, the products completed operations aggregate limit is the most we will pay under coverage A for damages because of injury and damage included in the products completed operations hazard. So Judge Robart correctly determined the policy is clear, unambiguous. The products completed operations hazard coverage is part of coverage A, and the watercraft exclusion applies to all of coverage A. So it's not ambiguous. The watercraft exclusion applies to BART coverage. With respect to the illusory argument, Toll Bridge addressed it directly. Judge Robart concluded that under Toll Bridge, since there were shore-side operations that Trident had and my client covered shore-side operations but not vessel operations, this is not an illusory policy. There are policies in this case, as I said earlier, that cover the insurance Trident's vessel operations, and my client covers only shore-side operations. Thank you. Thank you. You have a minute for rebuttal. You might want to address this whole duty to defend because, of course, as they say in American Best Foods, it was independent enough to warrant a defense. They were clearly looking at the tender there. So the duty to defend, you just take the facts and you view them in the light most favorable to the insured. So it's very similar to a type of summary judgment standard. But viewing the facts in the light most favorable to the insured or taking all inferences for the insured doesn't change the rules of law that are established. The court was interpreting arising out of, and in the quotes you'll see on the handout as well, the court was interpreting the meaning of arise out of under Washington law. It was doing that as a legal matter. It wasn't doing it based on viewing facts one way or the other. And so the duty to defend analysis is the duty to do indemnify analysis. There is a difference, isn't there? Oh, there's a difference in terms of the way that you give the benefit of the doubt of the facts. No, there is a difference in terms of the difference between a duty to defend and a duty to indemnify. Correct. One is we're going to go out and hire some lawyers for you, and they're going to represent you, and we'll foot the bill. The other is we're going to write you a check. Sure, but in terms of the way that the court needs to get there and do that analysis, it doesn't change the coverage. It doesn't change the exclusions. It doesn't change the card back to exclusions. All it does is look at the facts and say, is there any way based on these facts that we can get there? Well, it does in a sense because if you look at a duty to defend under state law, and it depends upon which state in the Ninth Circuit you're looking at, but if there's any possibility of coverage, almost no matter how remote that possibility, you've got a duty to defend, as long as it's not so remote that there's no possibility of coverage. So you would look at any issue related to exclusions in that light versus here you have the liability established. We know what it was, and so you actually look at the substance of the exclusions, and you don't give that huge deference all the way along the line. Correct, but if you look at what the court did, just the first two sentences in the opinion, it doesn't say that it's anything to do with construing facts one way or the other. It's saying we are deciding as a legal matter an issue of first impression in Washington. That's what that case says it does. In the first two sentences it says, we're deciding whether or not post-assault negligence cause or exacerbated injuries cuts off this arising out of clause. And so the court says what it's doing, and it does not cabinet's decision within the duty to defend context. Thank you. Thank you very much, Your Honors. Thank you both for the argument this morning. The case of Trident v. Ace American Insurance is submitted.
judges: Hawkins, McKeown, Ezra